## Ada Harris Stoneking v. Orleans Village and Allen Clark, Trustee

[ 243 A.2d 763 ]

April Term, 1968

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed June 4, 1968

*Lee E. Emerson, Esq.,* for the Plaintiff.

*Downs & Rachlin* for the Defendants.

**Shangraw, J.** Plaintiff seeks to recover damages of the defendants by reason of the claimed negligence of the defendants in the construction, operation and maintenance of the sewer system of defendant Orleans Village. Allen Clark, one of the trustees and executive officer in charge of sewers for over sixteen years, is made a party defendant in this action.

The alleged damage was occasioned by reason of sewage and water backing up into the basement and first floor of plaintiff's house located on the northwesterly side of East Street in Orleans Village. This occurred during April, 1965.

There was a cement sidewalk on plaintiff's side of the street. The street and adjacent sidewalk were hard surfaced. Plaintiff's lawn from her cellar wall to the edge of the sidewalk was thirty to forty feet in width. The sewage from her home ran from her cellar, by means of a four inch tile passing through the wall, across her lawn to the sidewalk, then under the sidewalk and roadway a distance of about twenty feet, where it emptied through a "Y", into the municipality's main eight inch sewer line. The four inch line came into the main sewer on a 45 degree angle. The main line was about three to four feet southeasterly from the edge of the black top on East Street. Looking northeasterly, the main sewer line ran downhill until it emptied into the Willoughby River. This line accommodated both sewage and surface water.

There were twelve installations connected to this main line, ten residences, a high school and a church. One residence was above and southerly of plaintiff's home.

On plaintiff's lawn was a large tree located near the four inch line which ran from plaintiff's cellar, under the lawn, sidewalk, and road-way, to the connection with the eight-inch line. Southeasterly of the highway was a shoulder and bank on which elm trees had been cut and on which was growing bushes and underbrush.

Plaintiff's home was purchased in 1947. From time to time her four inch line became obstructed. Whenever called by the plaintiff, the village employees would come to the property and immediately relieve this condition by using a "snake" which was inserted into the four inch line from plaintiff's cellar and pushed into the line in the direction of its connection with the main sewer line.

Because of the distance from the plaintiff's cellar to the eight inch line, and by reason of the location and construction of the Y connection where the two lines joined, it was impossible for the snake to enter the eight inch line. The snake could not have been used in this manner to unplug the main sewer line.

In 1954, the village employees, at the plaintiff's expense laid a new line from the foundation of the house to the sidewalk. The re-mainder of the four inch line leading from the sidewalk to the main sewer remained in the ground unchanged. The plaintiff continued to have occasional stoppage in her sewer line.

During the fifteen years while defendant, Allen Clark, had been village trustee and in charge of the sewer system, there had never been a bockage or stoppage in the main eight-inch East Street sewer line. There had been no blockage of this line since it was installed in 1920. The village had never dug up the line to make repairs or changes in it.

The plaintiff went to Florida for an extended period of time in the winter of 1964-1965. She was in Florida on April 15, 1965, when it was discovered that a substantial quantity of sewage material and water was in the basement and first floor of her house as a result of a back-up in the sewer system.

Village employees were called and it was discovered that the eight-inch line was obstructed below the Y connection where Mrs. Stone-king's line entered the main sewer. In order to determine the location of the obstruction, the eight-inch line was broken in three places. All

three breaks were made downhill from the Stoneking connection with the main line, and it was only when the third break was made, that the location of the blockage was determined. This third break was the one furthest away from the Stoneking connection. This main line was plugged with roots and some gravel. Sewage and water coming down the eight inch line had backed up through the four inch line into the Stoneking residence. There was no check valve on plaintiff's sewer pipe to prevent a backup.

At this time there was no plugging or problem of any kind with the four inch Stoneking line, and there had been none since October 1963. All the trouble was located in the eight-inch main sewer line. The Stoneking line functioned properly after repairs were made to the main line.

Neither of the defendants had prior knowledge of any obstruction in the eight-inch line, and had never experienced any blockage of the East Street sewer line prior to April, 1965. Repairs to the main line were made as quickly as knowledge of the obstruction was brought to the attention of defendant Clark and the village authorities. About 75 feet of the eight-inch sewer pipe was replaced.

Trial was by jury in the Orleans County Court resulting in a verdict for the defendants. At the conclusion of plaintiff's evidence the defendants moved for a directed verdict which was denied. This motion was renewed at the close of all the evidence and again denied. After verdict the plaintiff moved to set it aside and to render judgment for the plaintiff notwithstanding the verdict, and as an alternative, set aside the verdict and grant a new trial on the issue of damage only. This motion was denied and judgment entered on the verdict. Plaintiff has appealed.

The evidence clearly demonstrates that the clogging of the sewer of the municipality at some distance below the entrance of plaintiff's line therein caused the alleged damage, and not the plugging of plaintiff's line. Notwithstanding this fact considerable evidence was introduced by the plaintiff as to the location, condition, clogging, and repairs to plaintiff's line from time to time, as recited in the facts set forth in this opinion.

As bearing on notice to the defendants on the condition of the main eight-inch sewer line, plaintiff appears to claim that roots could have entered in this line and might have come up into the plaintiff's four inch line from time to time, and caused plaintiff's trouble on several oc-

casions. This appears to be speculative as evidenced by the following testimony of defendant Clark on cross-examination of plaintiff's attorney.

"Q. The difficulty was caused by a back-up of some kind?

A. The difficulties prior to this April 15th date, the difficulties then were all in Mrs. Stoneking's four inch service line.

Q. Did you ream them out?

A. Yes.

Q. What did you take out for material?

A. You can't tell a lot of times. Sometimes they push through. It indicated roots.

Q. Any other material?

A. I can't recall that there was.

Q. Those roots could have come up from the eight inch line into her line, could they not?

A. Yes, possibly, or they could have come from this tree shown in the picture."

The tree to which the witness referred to is on the property of the plaintiff and close to her unsealed sewer line. Mr. Clark also testified that in his opinion this tree had very much to do with plaintiff's prior difficulties.

Plaintiff contends that there is ample and uncontroverted evidence in the case that the defendants had knowledge and notice of plaintiff's difficulties in her four inch line to the street, and under the street to the eight inch line. This condition did not contribute to the damage claimed in this action. There is no convincing evidence that the trouble in the main sewer line, during April 1965, contributed to plaintiff's prior difficulties.

Plaintiff attempts to develop the point that the four inch line, and more particularly that portion which ran under the sidewalk and street, was a part of the sewer system for which the municipality was responsible. Under the facts present in this case, we fail to see how this concept improves the plaintiff's position on this appeal. The obstruction in question did not occur at this point. No well founded inference could have been drawn by the jury that this obstruction was caused or contributed to by roots and debris directly entering into the four inch line under the street and passed along to point of stoppage in the main line. At most, this would have been mere surmise.

The main sewer line was installed in 1920. The joints of the tile or pipes were not sealed or mortised. Tree stumps and brush were in close proximity thereto during April 1965 and prior thereto. By this evidence plaintiff seeks the inference that the defendants were on notice of the likelihood that roots would find their way into this sewer line. No affirmative evidence was introduced as to the source of the roots found in the line in April 1965. Where they came from does not appear.

Plaintiff claims that she was unduly curtailed and limited during the trial in the introduction of evidence concerning the construction, operation and maintenance of the eight inch line, and the defendants' knowledge of facts putting them on notice of its condition. To this end, plaintiff's major line of inquiry concerned the four inch line and its blockage on several occasions. It is apparent that plaintiff considered that the prior stoppages and condition in this line were related to the blockage which occurred in the main sewer in April 1965, and thereby served as notice to defendants of the claimed defective condition in the main sewer line.

We have carefully reviewed the evidence in its entirety, and without delving into further details, fail to find in what manner the plaintiff was unjustly curtailed in the introduction of evidence on the issue of notice.

■ The complaint in this action is founded on ordinary negligence. The trial was conducted accordingly. The case was submitted on the theory that there were proper questions for the jury on the issue of the defendants' negligence. There was no motion nor objection from the plaintiff to the contrary. In this situation, and particularly without a prior motion for a directed verdict, the plaintiff cannot, as a matter of right, challenge the evidentiary support of an adverse verdict by way of a motion to set it aside. *Skoll* v. *Cushman,* 111 Vt. 160, 164, 13 A.2d 180.

But, if the basis of the lower court's ruling was procedural, the plaintiff has not been harmed. The record demonstrates adequate support in the evidence for the result which was reached in the trial below.

■ The general rule is that where a municipality assumes the management of its sewer system, it is bound to use reasonable diligence and care to see that such sewer is not clogged with refuse and is

liable for negligence in the performance of such duty to a property owner injured thereby. *Holdenville* v. *Moore* (Okl.1956) 293 P.2d 363, 59 A.L.R.2d 276, 280.

Liability arises, of course, where it is shown that a municipality had actual or constructive notice of the existence of an obstruction in one of its sewers and fails to act. See cases cited under section 8, sub-section (c) of the annotation in 59 A.L.R.2d, *supra,* at pages 308 and 309. A municipality is not liable for damage resulting from the clogging of a drain or sewer, if there is no negligence on its part either in the prevention or the removal of the obstruction. 38 Am.Jur., Municipal Corporations, section 636, p. 342.

In the construction and maintenance of sewers and drains such a corporation is required to exercise needful prudence, watchfulness, and care. *Schwartau* v. *Miesmer,* 50 N.J.Super. 399, 142 A.2d 675.

Ordinary or reasonable care and diligence are the standard of municipal duty in this respect, by which is meant such as a man of average prudence and discretion would exercise to protect his own property under like conditions. 63 C.J.S. Municipal Corporations §876, p. 256; *Mitchel* v. *Dover,* 98 N.H. 285, 99 A.2d 409. Thus, in *Rowe* v. *City of Portsmouth,* 56 N.H. 291, 22 Am.Rep. 464, it was said that in the maintenance of its public sewers a city is bound to exercise that care and prudence to keep them free from obstruction which a discreet or cautious individual would or ought to use if the whole risk or loss was to be his alone.

The plaintiff made no objection to the charge, and by such failure has not been harmed. The instructions by the trial court were complete and fair, furnishing a proper explanation of the rules of law to be applied in resolving the issues made by the pleadings, according to the theory upon which the case was tried. The case was correctly submitted to the jury and we find no cause to reverse the judgment that was entered.

From what has been said in this opinion, plaintiff's motion for judgment n. o. v. was properly denied. Such a motion cannot be granted if there is any evidence fairly and reasonably tending to justify the verdict. *Smith* v. *Blow and Cote Inc.,* 124 Vt. 64, 66, 196 A.2d 489; *Langevin* v. *Gilman,* 121 Vt. 440, 445, 159 A.2d 340.

Our disposition of this cause makes it unnecessary to consider the denial of defendants' motion for a directed verdict made at the close of plaintiff's case.

*Judgment affirmed.*