## John and Suzanne MACIEJKO v. LUNENBURG FIRE DISTRICT NO. 2

[758 A.2d 811]

No. 98-385

August 21, 2000. Plaintiffs John and Suzanne Maciejko sued defendant Lunenburg Fire District No. 2 (the district) for damages that resulted when water backed up into the basement of the apartment they were renting from Keith Desrochers (landlord). The small claims court concluded that the district was liable for failing to properly maintain its sewer system.. The superior court disagreed but nonetheless affirmed, holding that the district was liable for failing to enforce its sewage ordinance against landlord. We reverse.

The small claims court found the following facts which, on appeal, are not in dispute. Plaintiffs rent half of a duplex house, and Barbara Walker rents the other half. The basement is separated by a partition. A drainage system, located in the basement floor, drains water from plaintiffs' side into Walker's side; a removable cap covers the drain on Walker's side. The system is connected by a service line to the municipal sewage system's sewer main. The district operates the municipal sewage system, but has no plan or policy regarding maintenance of the system. The system was likely installed in the 1930's, and the connections of the individual service lines to the main are precarious.

On Christmas morning 1996, plaintiffs discovered approximately four feet of water and sewage in their basement. Plaintiffs called landlord, who lives next door to them. Landlord called Calvin Colby, a member of the district's Prudential Committee. Colby went to the duplex and spent approximately four hours pumping the water and sewage out of the basement. He also discovered an obstruction in the sewer main directly in front of landlord's house. The district flushed out the line and removed the obstruction. Neither Colby nor the district ever determined what the obstruction was composed of. The small claims court made no finding as to how long the obstruction had been in the sewer main.

The district had no actual knowledge of either the obstruction in the sewer main or the backup in plaintiffs' basement until landlord called Colby on December 25, 1996. Approximately five years earlier, in a similar incident, sewage and water backed up into the basement of the duplex.

At the hearing before the small claims court, Mr. Maciejko testified that, when he discovered the flood, the removable cap was not on the drain. Based on this testimony, the small claims court concluded that landlord had a practice of discharging water into the sewer through the drain on Walker's side of the basement, in violation of a sewage ordinance that the district adopted pursuant to 24 V.S.A. § 3617.

Plaintiffs sued the district in small claims court, seeking to recover damages they sustained as a result of the flooding. The court concluded that the district was negligent because: (1) it had a duty to properly maintain the sewer system; (2) in not having a maintenance plan or policy, the district breached that duty, particularly given the age and condition of the system; (3) that breach was the proximate cause of the flooding in plaintiffs' basement; and (4) plaintiffs sustained damages as a result of the flooding. The court entered a $680.00 judgment against the district.

The district appealed to the superior court. The court held that there was insufficient evidence to support the conclusion that the district's lack of a maintenance plan was the proximate cause of the backup. However, the court affirmed on other grounds. According to the court: (1) landlord was required, under the district's sewage ordinance, to cap the drain on Walker's side of the basement with cement; (2) landlord "had been warned in a similar incident five years previously to cement the basement plug in this house;[1] . . . he had not done so; and . . . [the district] had taken no steps to enforce the ordinance to require him to do so"; and (3) if landlord had cemented the drain plug, "the sewer backup would not have occurred, despite the blockage in the line." Thus, the court held that the district was liable to plaintiffs because, had the district enforced its ordinance against landlord, the backup would not have occurred.

On appeal, the parties do not challenge the lower courts' findings of fact.[2] Thus, we review only the lower courts' conclusions of law, and our review is "nondeferential and plenary." *N.A.S. Holdings, Inc. v. Pafundi*, 169 Vt. 437, 439, 736 A.2d 780, 783 (1999). Where the lower courts have correctly applied the law, we will affirm their conclusions if they are reasonably supported by the findings. See *Schnabel v. Nordic Toyota, Inc.*, 168 Vt. 354, 357, 721 A.2d 114, 118 (1998).

We agree with the superior court that the small claims court's findings were insufficient to support its conclusion that the district's failure to have a regular maintenance plan or policy was the proximate cause of the backup. However, we conclude that the superior court erred in holding the district liable to plaintiffs for the district's alleged failure to enforce its sewer ordinance. We address the decision of the small claims court first.

The small claims court based its holding regarding proximate cause in part on its conclusion that the obstruction in the sewer main was the result of the district's lack of a maintenance plan or policy.[3] However, there was no evidence to show that a regular maintenance plan or policy would have led to the discovery or prevention of the obstruction. As noted, the small claims court found that Colby discovered the obstruction on December 25. However, the court made no finding as to how long the obstruction had been in the sewer main. Without this finding, it is impossible to conclude that regular maintenance would have prevented the obstruction. For example, if the district had a maintenance policy under which it was required to clean out the sewer main on the first of every month, but the obstruction had only been in the main since the 15th of the month, then, even if the district had abided by its policy, the obstruction might still have been in the main on the 25th. Thus, without a finding as to how long the obstruction had been in the main, the court erred in holding that the district's lack of a maintenance plan or policy was the proximate cause of the backup.[4]

---

[1] The superior court made this additional finding of fact after listening to the audiotape of the hearing before the small claims court.

[2] The district does challenge the authority of the superior court to make factual findings on appeal from the small claims court. However, we need not reach that issue.

[3] The court's holding was also based on its conclusion that the obstruction was the cause of the flooding in plaintiffs' basement. However, because of our disposition of this matter, we do not address whether there was sufficient evidence to conclude that the obstruction caused the flooding.

[4] Because of our conclusion in this regard, we do not reach the question of whether,

Next, the superior court concluded that the district was liable to plaintiffs for failing to enforce its sewer ordinance against landlord. The court was referring to the above-mentioned portion of the ordinance which prohibits the discharging of water and other specified materials into sewers. From this, the court apparently inferred that the ordinance required caps to be cemented, and that landlord's use of a removable cap therefore violated the ordinance. It is not clear whether the court's inference in this regard was correct. However, even if the court's inference was correct, its conclusion was in error.

In *Corbin v. Buchanan*, 163 Vt. 141, 657 A.2d 170 (1994), a seven-year-old boy died in a fire in his father's apartment in the Town of Brattleboro. Shortly before this incident, the town enacted a housing code pursuant to 24 V.S.A. chapter 123. In relevant part, the code required the inspection of buildings and the enforcement of orders to correct dangerous conditions. However, unless a building was new, the town would enforce its code only in response to specific complaints.

Soon after the code was enacted, in response to complaints about plumbing, wiring and sewer problems, the town sent an inspector to the decedent's father's apartment. The inspector noticed that there was no smoke detector in the apartment, but took no further action, instead limiting his investigation to the scope of the complaints. Shortly thereafter, the boy died in a fire. His estate sued the town, arguing that the town was negligent for failing to enforce its code because the inspector did not require the decedent's father or the landlord to install a smoke detector.

The town filed a motion for summary judgment, arguing that its failure to enforce its code created no private right of action. The trial court denied the motion, and the jury returned a verdict in favor of the plaintiff. We reversed, holding that an individual plaintiff may not recover in tort against a municipality for its failure to enforce an ordinance whose purpose is protection of the public as a whole. See *id.* at 143, 657 A.2d at 172.

In so holding, we first noted that, under the common law, a private citizen has no cause of action against a municipality for failure to enforce its ordinances. See *id.* at 144-45, 657 A.2d at 172-73. Next, we concluded that, in enacting 24 V.S.A. chapter 123, the Vermont Legislature did not intend to create such a cause of action. See *id.* at 146, 657 A.2d at 173-74 ("The social, fiscal, tax, and public policy implications of a statute creating a private right of action based on a town's adoption of building code regulations would be enormous, and there is no indication in this record that the Legislature contemplated any such consequences."). Finally, we noted that the ordinance at issue expressly provided for the safety of

---

under the facts of this case, the district had a duty to properly maintain the sewer system, and if so, whether it breached that duty. In holding that the district had a duty and breached it, the small claims court relied on *Stoneking v. Orleans Village*, 127 Vt. 161, 243 A.2d 763 (1968). There, we stated: "[W]here a municipality assumes the management of its sewer system, it is bound to use reasonable diligence and care to see that such sewer is not clogged with refuse and is liable for negligence in the performance of such duty to a property owner injured thereby." *Id.* at 166-67, 243 A.2d at 766. Furthermore, we stated: "Liability arises . . . where it is shown that a municipality had actual or constructive notice of the existence of an obstruction in one of its sewers and fails to act." *Id.* at 167, 243 A.2d at 766. Moreover, "[o]rdinary or reasonable care and diligence are the standard of municipal duty in this respect." *Id.* In *Creighton v. Town of Windsor*, 154 Vt. 348, 577 A.2d 681 (1990), we further clarified the standard for determining a municipality's negligence in cases of sewer backups.

the general public, and that, "[i]f allowed under its charter, the Town itself might have created a private right of action," but did not do so. *Id.* at 146, 657 A.2d at 174. We also noted that the ordinance at issue in *Corbin* expressly prohibited a private cause of action against the town. See *id.* at 147, 657 A.2d at 174.

As we stated in *Corbin*, there is no common-law private right of action against a municipality for failure to enforce its codes. Further, the statute at issue here, 24 V.S.A. § 3617, was enacted as part of 24 V.S.A. chapter 101, which is entitled "Sewage Disposal System." Section 3617 is the enabling statute that authorizes municipalities to enact sewage ordinances. In this case, the district enacted the ordinance at issue pursuant to its authority under 24 V.S.A. § 3617. As in *Corbin*, there is no indication that, in enacting 24 V.S.A. chapter 101, the Legislature intended to create a private right of action based on a municipality's adoption of a sewage ordinance. Finally, as in *Corbin*, the ordinance at issue here expressly states that its purpose is "the protection of the health and safety of Fire District No. 2 and of the general public." Nowhere does the ordinance create a private right of action. Therefore, as in *Corbin*, plaintiffs here have no cause of action against the district for failing to enforce its ordinance. The superior court erred in assuming otherwise.

*Reversed.*

**Morse, J.,** dissenting. The issue in this appeal may not seem to be significant and the damages are relatively small, but this is the first small claims appeal we have decided with a published opinion under 12 V.S.A. § 5538 stating the standard of review in a negligence case. I write separately because I disagree with that standard.

We are presented with facts that are not challenged as clearly erroneous, yet the Court believes it can decide the outcome of this case with no deference to the judgment of the trial court. It is axiomatic, however, that the ultimate issue in a negligence case is comprised of a mixed question of law and fact. See, e.g., *Latremouille v. Bennington & Rutland Ry.*, 63 Vt. 336, 344-45, 22 A. 656, 658 (1891) (negligence is a "mixed question of law and fact, always, under the decisions of this state, to be submitted to the jury"); *Michaud v. Gurney*, 362 A.2d 857, 859 (Conn. 1975) (in negligence cases, "the ultimate issue in contention involves a mixed question of fact and law, and requires the trier of fact to determine whether the standard of care was met in a specific situation."). Accordingly, we may reverse the judgment only where the facts are so conclusive that but one reasonable inference may be drawn therefrom. See *Hudson v. Town of East Montpelier*, 161 Vt. 168, 179-80, 638 A.2d 561, 568 (1993) (in reviewing finding of negligence by trier of fact, standard is whether any evidence fairly and reasonably tended to support verdict); *LaFaso v. LaFaso*, 126 Vt. 90, 96, 223 A.2d 814, 819 (1966) (existence of negligence is ordinarily question for finder of fact, and can be ruled as a matter of law only where facts are so undisputed and conclusive that but one reasonable inference is available).

The salient facts, which were essentially the basis for the trial court's judgment that the district was negligent, may be briefly summarized.

The sewer backup was caused by at least two probable antecedents, one attributable to the owner of the duplex and the other to the defendant district. The owner violated the sewer ordinance by regularly discharging waste water into the sewer. The cause of the backup, an obstruction in the discharge pipe, may have originated from this practice. The sewer system is old, having been installed in the 1930's. The line in question, like all such lines, was known to be in "precari-

ous" condition, and there had been considerable construction near the duplex before the backup. Similar trouble at the Maciejko sewer connection occurred five years earlier, yet nothing had been done by the district to inspect the condition of the lines or monitor improper use. There simply had not been enough money in the district budget to inspect, maintain and upgrade the lines. It is readily apparent that had the district inspected and maintained the sewer lines, the improper discharge of waste water by the duplex owner, or whatever else may have caused the backup, might have been discovered and remedied. In fact, the district had been on notice that this was occurring.

This court reverses because "there was no evidence" that lack of inspection and preventative maintenance would have avoided the sewer backup. I submit there could never be such "evidence" because there is no way to back up the clock and implement an inspection and maintenance plan to see if no backup would occur. Rather, logic suggests that, had there been a plan, the chances would have been greatly improved that this accident would not have occurred. That's the purpose of preventative maintenance.

In short, the district's negligent maintenance policy deprived the Maciejkos of either (1) protection against illegal and destructive use of the sewer or (2) an upgraded sewer, which could have withstood the abuse. It is not their burden to prove conclusively that an inspection and maintenance would have done so. They need prove only the probability of it.

I would affirm.